IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| In re: | ) | Case No. 09-42348 |
|---|---|---|
| ALTRA NEBRASKA, LLC, | ) | Chapter 11 |
| Debtor. | ) | |

**MOTION UNDER SECTIONS 105(a), 363 AND 365 OF THE BANKRUPTCY CODE TO APPROVE THE ADVERTISEMENT, MARKETING AND SALE OF ALL THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS; AND SETTING A DATE FOR A SALE HEARING**

Altra Nebraska, LLC, debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, hereby respectfully submits this motion (the "Motion") for an order pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving: (i) the advertisement, marketing and sale of the Debtor's assets free and clear of all liens, claims and interests, through an auction or negotiated sale conducted by Maas Companies, Inc. ("Maas"), one of the country's most experienced ethanol plant liquidation companies.[1]; and (ii) setting a date for a sale hearing. The sale would be held via an auction conducted by Maas after a reasonable period of time to market and advertise the assets to be sold. The auction would be held both in person and via the internet to maximize the potential purchaser pool.

In support of this Motion, Debtor provides the following:

**BACKGROUND**

1. On August 13, 2009 (the "Petition Date"), the Debtor filed with this Court a

---

[1] Maas reports it has sold more ethanol plants and related equipment via auctions and negotiated sales than another company in the United States. As discussed *infra*, Maas has successfully marketed and sold 70 similar plants and has historically received recoveries of 30% to 40% of cost for its clients. Affidavit of Tyler Maas ("Maas Affidavit") at ¶ 9.

voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as debtor-in-possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code.

2. No trustee or examiner has been appointed.

3. The Debtor began construction of a $220 million, 110 million gallon annual capacity ethanol production facility (the "Ethanol Plant") near Carleton, Nebraska in October 2006. After exhausting the equity contributions it had available, the Debtor obtained a short-term construction loan from Fourth Third. Fourth Third initially provided a $22.5 million credit facility to the Debtor to be used for the continuing construction of the Ethanol Plant (the "Construction Loan") which was secured by all Debtor's real and personal property and a pledge of Altra, Inc.'s ("Altra") membership interest in the Debtor (the "Prepetition Collateral"). The maturity date of the Construction Loan was April 30, 2008. Construction continued until November 2007 when it was suspended due to Debtor's inability to obtain a long term construction loan to complete construction of the Ethanol Plant. Approximately 50% of the Ethanol Plant is complete.

4. Altra, then the sole member of the Debtor, continued to seek other financing without success, and in February 2009, Fourth Third strictly foreclosed its security interest in Altra's membership interests in the Debtor, and became the Debtor's sole member. Fourth Third then hired Carleton Management, LLC as the Debtor's sole manager with responsibility for maintaining its facilities, and seeking opportunities to finance completion of the Ethanol Plant or find a purchaser for its assets.

5. Subsequently, Fourth Third agreed to loan to the Debtor an additional $3 million on a multiple advance basis pursuant to an amended and restated promissory note dated effective

as of April 14, 2009 to fund ongoing maintenance and security while the Debtor attempted to obtain additional financing or a purchaser for its assets. The Debtor has taken the necessary measures to secure the Ethanol Plant to maintain its value by contracting with various independent contractors to provide ongoing maintenance and security services with the help of local security firms while simultaneously looking for financing and sales alternatives to either complete or sell the Ethanol Plant.

6. Prior to the Petition Date, the Debtor with Fourth Third's financial assistance retained, as described in Paragraph 5 above (i) the consulting firm Aclaria Partners Incorporated to explore options for the maximization of the Ethanol Plant's going concern value through new investors, additional financing or a purchaser; and (ii) contracted with Maas Companies, Inc. ("Maas"), an international auction company with substantial experience in the marketing and auctioning of ethanol production facilities, such as the Ethanol Plant, either as a going concern or for parts. As of the Petition Date, the Debtor, even with the assistance of these consultants was unable to find a ready, willing and able financer or buyer for the Ethanol Plant.

7. Postpetition the Debtor intends to have Maas and/or a real estate agent market and auction the Ethanol Plant to obtain its highest and best value for its assets. Maas has advised the Debtor that it estimates the assets can sell for between 30% to 40% of the cost. Maas Affidavit ¶ 9. Debtor believes this will provide the highest and best value for its assets.

8. In connection with the construction of the Ethanol Plant the contractors and subcontractors through their prime contractors as listed in Exhibit "A" have filed construction liens (the "Lien Claimants") against the real estate and real property improvements comprising the Ethanol Plant. The Lien Claimants assert they hold a first priority position on the assets subject to their construction liens. Three of the Lien Claimants (Starostka Group Unlimited,

Strobel Group and Beatrice Concrete) filed actions to foreclose their liens in Thayer County, Nebraska District Court. As a result of that suit and an inability to find financing or a buyer willing to purchase the Ethanol Plant, it became necessary to file this proceeding. The Debtor determined that the cost to complete the Ethanol Plant in light of the number of completed and functioning ethanol production plants available in the area, and overall bleak outlook for ethanol's future requires an orderly sale to maximize the value of its assets. Contemporaneously with this Motion, the Debtor has filed this Bankruptcy seeking to sell the Ethanol Plant and related real estate pursuant to an auction under 11 U.S.C. § 363 conducted by Maas, and thereby maximize the value of the Debtor's estate.

9. The Debtor's secured creditors consist of Fourth Third and the Lien Claimants. Fourth Third asserts a total aggregate claim of $29,912,564.97 as of August 12, 2009, and the Lien Claimants assert aggregate claims of $31,080,667.45. Fourth Third's claim is secured by a lien on the real estate and real property improvements comprising the Ethanol Plant and a security interest in the Prepetition Collateral consisting of personal property. The Lien Claimants' claim is secured by the real estate and fixtures which constitute the "improvement" made by the Debtor to the real estate where the Ethanol Plant is being constructed (the "Lien Claimant Collateral"). There is a dispute between Fourth Third and the Lien Claimants regarding the priority and extent of their respective liens on the real estate improvement and fixtures comprising the Ethanol Plant.

10. Since at least the fall of 2008, the Debtor has undertaken concerted efforts to locate potential investors or financiers to fund completion of the Ethanol Plant. Due to the saturation of completed and partially completed ethanol facilities available in the Debtor's area, and the overall decline of the capital markets, the Debtor has not yet been successful in locating

financing or venture capital to complete the Ethanol Plant. Realizing time was of the essence to maximize the value of the Debtor's assets, the Debtor in addition to the pursuit of venture capital retained Maas in the spring of 2009 to potentially sell the assets via auction or a negotiated sale.

11. Despite the Debtor's and its consultant's efforts, it has been unable to locate a purchaser willing to enter into an asset purchase agreement and act as a selling house bidden in an auction. As a result the Debtor filed this case seeking to liquidate its assets via an auction as a whole or in part through an auction held by Maas.

12. Pursuant to the terms of the Debtor's agreement with Maas, but subject to the Auction and Bid Procedures, the Debtor proposes to sell via a public auction through Maas (the "Sale") substantially all of its assets (the "Assets").

## JURISDICTION

13. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are Sections 105(a) and 363 of the Bankruptcy Code and Rules 2002, 6004 and 9006 of the Federal Rules of Bankruptcy Procedure.

## RELIEF REQUESTED

14. The use of Maas and the holding of a public auction and/or the use of a real estate agent with regard to the real property following a reasonable time of advertising and marketing of the Assets insures that the Debtor will maximize the value of the Assets to the Debtor's estate. Entry of the court order authorizing the sale of the Assets shall constitute the approval of the sale by Maas and/or a real estate agent of the Debtor's Assets outside the ordinary course of business. The approval of the manner of sale, and the payment of the fees and commissions due to Maas and/or a real estate agent for the services provided as set forth in Exhibit "B".

15. As described herein, the Debtor proposes to sell the Assets to the highest and best bidder at a public auction conducted by Maas and/or a real estate agent for the real property subject to a stand listing arrangement. The auction and/or real estate sale in this manner will allow the Debtor to realize the highest value for the Assets and will maximize value to the Debtor's estate. Consequently, the Court should approve the Sale of the Assets via an auction by Maas to bidders qualified by Maas as provided for in Exhibit "B" and by Maas long established procedures for bidder qualification and/or the sale of the real property by a real estate agent under a standard listing agreement (the foregoing referred to as the "Sale Procedures").

16. Bankruptcy Code Section 363(b)(1) provides that the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." The decision to enter into an agreement out of the ordinary course of the debtor's business is to be based on the reasonable business judgment of the debtor. In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5$^{t}$' Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983). The court should approve a use, sale or lease of property under Bankruptcy Code Section 363(b) if the debtor has established some articulated business justification for the proposed transaction. In re Walter, 83 B.R. 14, 16 (9$^{t}$' Cir. BAP 1988); In re Wilde Horse Enterprises, Inc., 136 B.R. 830 (Bankr. C.D. Cal. 1991).

17. Moreover, pursuant to Section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell all or any part of its property free and clear of any and all liens, claims or interests in such property if (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a bona fide dispute; or (v) the party asserting the lien,

claim or interest could be compelled, in a legal or equitable proceeding, to accept money satisfaction for such interest. See 11 U.S.C. § 363(f); In re Elliot, 94 B.R. 343, 345 (E.D. Pa. 1988) (section 363(f) written in disjunctive; court may approve sale "free and clear" provided at least one of the subsections is met).

18. The Debtor's decision to sell the Assets is based upon the reasonable exercise of the Debtor's sound business judgment. Prior to deciding to pursuant to the Sale Procedures, the Debtor undertook concerted efforts to locate financiers or investors, and to sell the assets privately. All parties contacted declined to proceed with any further financing or investment in the Debtor, and declined to purchase the assets privately. A public auction or real estate sale under the Sale Procedures will provide the best and perhaps only means of the sale of the assets to maximize their value. Maas has report that it has extensive experience in the sale of similar partially completed facilities having conducted sale of 70 such partially completed or shut down ethanol facilities in the United States. Maas Affidavit ¶ 7. Based upon Maas' over 20 years of experience as described in the Maas Affidavit it is his opinion that the sale of the Debtor's assets will be commensurate with those of similar facilities which have historically sold 30% to 40% of cost range. Maas Affidavit ¶ 9. Given the Debtor has been unable to sell the assets despite several months of marketing as well as the problems faced by the ethanol industry the Debtor respectfully submits that the decision to proceed with an auction by Maas resulted from the reasonable exercise of the Debtor's business judgment.

19. Approving the sale of the Assets free and clear of all liens, encumbrances, claims and interests is warranted because: (i) the Assets sought to be sold are subject only to the liens of Fourth Third and Lien Claimants.

20. The liens and security interests of Fourth Third and Lien Claimants shall attach to the proceeds of the sale in the same extent, validity and priority as existed in and to the Assets, subject only to the provisions of the DIP Financing Order entered in this case.

21. Applying section 363, courts accord a debtor substantial deference in formulating procedures for selling assets. See e.g., In re Integrated Resources, Inc., 147 B.R. 650, 656-57 (Bankr. S.D.N.Y. 1992) (noting that overbid procedures and break-up fees arrangements that have been negotiated by a debtor in possession are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"), appeal dismissed 3 F.3d 49 (2d Cir. 1993); In re 995 Fifth Ave. Assocs., L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (same). Indeed, courts recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and are appropriate in the context of bankruptcy sales. See, e.g., Integrated Resources, 147 B.R. at 659 (such procedures should "encourage bidding and maximize the value of the debtor's assets"); In re Fin. News Network, Inc., 126 B.R. 152, 156 (S.D.N.Y.) ("court-imposed rules for the disposition of assets... [should] provide an adequate basis for comparison of offers, and provide for a fair and efficient resolution of bankrupt estates"), appeal dismissed, 931 F.2d 217 (2d Cir. 1991).

## CONCLUSION

22. Based upon the authorities and facts detailed above, the Debtor submits that the Court should approve the sale of the Assets via the Sale Procedures, approve payment to Maas for the fees and commission listed in Exhibit "B", and payment of a reasonable real estate commission under any standard listing agreement with a qualified real estate broker may be entered into hereto for such services, and authorizing the Debtor to sell the Assets free and clear of all liens, encumbrances, claims and interests to a buyer or buyers pursuant to the Sale Procedures.

Such relief is warranted because the Debtor has shown that the transactions connected to the sale of the Assets by an auction by Maas in this manner are in the best interests of the Debtor, its estate and creditors, and because the decision to engage Maas as auctioneer and sell the Assets in this manner was reached in the exercise of the Debtor's sound business judgment, after careful deliberation of its consequences and possible alternatives.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order: (a) subject to the approving the sale of the Assets via the Sale Procedures described herein; (b) authorizing the sale of the Assets free and clear of all liens, encumbrances, claims and interests and approving the Auction procedure listed in Exhibit "B" hereto; (c) approving payment to Maas and for the fees and commissions described in Exhibit "B" hereto for such services and a reasonable real estate commission to any broker selling the real estate; and (d) providing such other relief as is just and proper.

DATED this 13th day of August, 2009.

Respectfully submitted,

**ALTRA NEBRASKA, LLC,**
Debtor

By: /s/ *Robert J. Bothe*
    Robert J. Bothe, #15018
    James J. Niemeier, #18838
    Robert P. Diederich, #23393
    McGrath North Mullin & Kratz, PC LLO
    Suite 3700, First National Tower
    1601 Dodge Street
    Omaha, Nebraska 68102-1627
    Telephone: 402-341-3070
    Facsimile: (402) 341-0216

**ATTORNEYS FOR DEBTOR**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2009, I caused filing of the foregoing with the Clerk of the Bankruptcy Court using the CM/ECF system, and further certify that on the same date I mailed by United States mail, first-class postage prepaid, this document to each of the individuals listed below:

| | |
|---|---|
| United States Trustee's Office<br>111 South 18th Plaza<br>Suite 1148<br>Omaha, NE 68102 | Starostka Group Unlimited, Inc.<br>Joel Heusinger<br>Brian Koerwitz<br>Woods & Aitken LLP<br>301 South 13th Street, Suite 500<br>Lincoln, NE 68508 |
| Strobel Group Unlimited, Inc.<br>Joel Heusinger<br>Brian Koerwitz<br>Woods & Aitken LLP<br>301 South 13th Street, Suite 500<br>Lincoln, NE 68508 | Beatrice Concrete Company, Inc.<br>Joel Heusinger<br>Brian Koerwitz<br>Woods & Aitken LLP<br>301 South 13th Street, Suite 500<br>Lincoln, NE 68508 |
| Advanced Consulting Engineering Services, Inc.<br>Leanne Ritter<br>1037 F. Road<br>West Point, NE 68788 | Aqua Plumbing & Heating<br>Daniel L. Werner<br>Daniel L. Werner, P.C., L.L.O.<br>429 Lincoln Avenue<br>PO Box 28<br>Hebron, NE 68370 |
| Bratney Companies<br>Michael K. Huffer<br>James D. Garriott<br>Cassem, Tierney, Adams, Gotch & Douglas<br>8805 Indian Hills Drive, Suite 300<br>Omaha, NE 68114 | Darland Construction Company<br>Joel Heusinger<br>Brian Koerwitz<br>Woods & Aitken LLP<br>301 South 13th Street, Suite 500<br>Lincoln, NE 68508 |
| DCR Construction, Inc.<br>William G. Garbina<br>Lieben, Whitted, Houghton, Slowiaczek & Cavanagh, P.C., L.L.O.<br>100 Scoular Building<br>2027 Dodge Street<br>Omaha, NE 68102 | Delta-T Corporation<br>Kevin Schneider<br>Austin McKillip<br>Cline, Williams, Wright, Johnson & Oldfather, L.L.P.<br>1900 U.S. Bank Building<br>233 South 13th Street<br>Lincoln, NE 68508 |

F.E. Moran, Inc.
Special Hazard Systems
James B. Cavanagh
Brittney Fullner
Lieben, Whitted, Houghton, Slowiaczek &
Cavanagh, P.C., L.L.O.
100 Scoular Building
2027 Dodge Street
Omaha, NE 68102

Gemma Power Systems, LLC
George B. Foster
Andrew L. Swope
K & L Gates
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222-2312

IDC Architects
David G. Hartmann
Yost, Schafersman, Lamme, Hillis,
Mitchell, Schulz & Hartmann, P.C.
81 West 5th Street
Fremont, NE 68025

J.A.-Con Mat, Inc.
William Sutter
Svehla, Thomas, Rauert & Grafton, P.C.
408 North Platte Avenue, Suite A
York, NE 68467

Koch-Glitsch, LP
Michael Degan
Lindsay K. Edwards
Husch Blackwell Sanders, LLP
1620 Dodge Street, Suite 2100
Omaha, NE 68102

Gemma Power Systems, LLC
Tim Engler
Harding & Shultz, P.C., L.L.O.
800 Lincoln Square
121 South 13th Street
Lincoln, NE 68508

Harrington Properties, Inc.
1300 Michigan Street
Gary, IN 46402

Interstates Engineering, Inc.
Michael P. Schmiedt
Crary, Huff, Inkster, Sheehan, Ringgenberg,
Hartnett & Storm, P.C.
1419 Dakota Avenue
South Sioux City, NE 68776

Kayle Heating & Air, Inc.
James Gotschall
Strope & Gotschall, P.C.
PO Box 858
O'Neill, NE 68763

Protech Global, LLC
Kevin Schneider
Austin McKillip
Cline, Williams, Wright, Johnson &
Oldfather, L.L.P.
1900 U.S. Bank Building
233 South 13th Street
Lincoln, NE 68508

Railworks Track Systems, Inc.  
Jeffrey T. Wegner  
Danielle J. Amorena  
Kutak Rock LLP  
1650 Farnam Street  
Omaha, NE 68102  

Stephens & Smith Construction Co., Inc.  
1542 South 1st Street  
Lincoln, NE 68502  

Fourth Third, LLC  
Randy Wright  
Jacqueline A. Pueppke  
Baird Holm LLP  
1500 Woodmen Tower  
1700 Farnam St  
Omaha, NE 68102-2068  

United States Trustee's Office  
111 South 18th Plaza  
Suite 1148  
Omaha, NE 68102  

Terracon Consultants, Inc.  
18001 W. 106th Street, Suite 300  
Olathe, KS 66061  

Nebraska Department of Revenue  
Attn: Bankruptcy Unit  
P.O. Box 94818  
Lincoln, NE 68509-4818  

Internal Revenue Service  
P.O. Box 21126  
Philadelphia, PA 19114  

Starostka Group Unlimited, Inc.  
Joel Heusinger  
Brian Koerwitz  
Woods & Aitken LLP  
301 South 13th Street, Suite 500  
Lincoln, NE 68508  

/s/ *Robert J. Bothe*_____  
Robert J. Bothe