## ASSIGNMENT

For good and valuable consideration, receipt of which is hereby acknowledged, the undersigned Jeffrey B. Farnham, P.C., L.L.O., a Nebraska corporation ("Corporation") hereby assigns that certain Auction Contract dated May 19, 2009 and executed on May 28, 2009, between Corporation (on behalf of Altra Nebraska, LLC, a Delaware limited liability company), and Maas Companies, Inc., a copy of which is attached hereto as Exhibit "A", and incorporated herein by this reference, to Altra Nebraska, LLC, intending by way of this Assignment to convey and transfer all of Corporation's right, title, interest and obligation in such Auction Contract to Altra Nebraska, LLC.

This Assignment, Acceptance and Consent may be executed in counterparts by facsimile or e-mail signatures.

DATED this 17 day of July, 2009.

JEFFREY B. FARNHAM, P.C., L.L.O.

By: _____
Jeffrey B. Farnham, President

## ACCEPTANCE OF ASSIGNMENT

Altra Nebraska, LLC hereby accepts the above and foregoing Assignment of the Auction Contract, and assumes the obligations of the Seller thereunder.

ALTRA NEBRASKA, LLC

By: CARLETON MANAGEMENT, L.L.C.

By: _____
David M. Traversi, Manager

## CONSENT TO ASSIGNMENT

Maas Companies, Inc. hereby consents to the assignment of the Auction Contract to Altra Nebraska, LLC, as set forth herein above, releases Corporation from any and all obligation or liability under the Auction Contract, and acknowledges and accepts Altra Nebraska, LLC as the Seller under the Auction Contract.

MAAS COMPANIES, INC.

By: _____
Diane Maas, President

C:\Share\WordPerfect\09 020-AltraNeb\assignment.071709.wpd


EXHIBIT B

10010

# AUCTION CONTRACT

THIS AGREEMENT is made on this 19th day of May 2009 by and between Jeffrey B. Farnham, P.C., L.L.O., a Nebraska professional corporation, 220 North 89th Street, Suite 201, Omaha, NE 68114 on behalf of Altra Nebraska, L.L.C., (hereafter "Seller"), and Maas Companies Inc, 6923 10 Ave SW (55902), PO BOX 7127, Rochester, Minnesota 55903, (hereafter "Maas"). Maas hereunder agrees to sell through public auction, or otherwise, the following described property belonging to Seller and Seller agrees to sell the same. The auction shall be conducted on location.

Property to be sold:   Altra Nebraska, LLC Ethanol Facility
                       Carleton, Nebraska

The following terms and conditions apply to this Contract:

1. Maas, with professional personnel on site, agrees to prepare all necessary marketing materials and procedures and to prepare the site for inspection/auction. Seller shall pay Maas the Phase I Pre-Marketing Fee as set forth in paragraph 21, hereinafter. During Phase I Maas will bill Seller dollar for dollar Maas' incurred subcontractor professional time, not to exceed $35,000. Maas will not charge Seller for any Maas employee time during Phase I. If prior to commencement of Phase II, Seller terminates this Agreement for any reason, Maas will be entitled to a fee of $100,000.00 plus any and all subcontractor expenses. The termination fee is payable within 10 days of the notice delivered via traceable courier to Maas Companies at the address noted above. Because Maas will give marketing and advertising exposure during Phase I, any sales so generated will be applicable to the 180 day clause.

2. Maas agrees to prepare all advertising material and publicity necessary to advertise the sale and promote attendance of buyers. This will include all brochures, trade journals and newspaper advertising, support work and coordination necessary. Seller shall pay Maas a Phase II Advertising and Marketing Fee of $42,964.95 payable when Phase II commences and defined on page 12 of the proposal dated April 24, 2009. Phase II shall commence only upon the mutual written agreement of Seller and Maas.

3. Seller will be responsible for pre-approved, documented out-of-pocket expenses for travel, food and lodging of the Maas team when travel to the site becomes necessary during the Phase I, Phase II and the Auction/Removal process. Maas will provide Seller an anticipated travel budget at time of contracting.

4. On the Equipment, Seller agrees to pay Maas a 10% Buyer Premium, which the buyers will be charged over and above their successful bid prices, or a 13% Internet Buyer Premium, which the internet buyers will be charged over and above their successful bid prices, as applicable. In addition, Seller is responsible for a 5% Commission on net sales (gross sales less Buyer Premiums and Internet Buyer Premiums) equaling to or exceeding $15,000,000.00, at which point the 5% commission is payable on all net sales (including the first $15MM). Sales of $14,999,999.99 or less are not subject to a commission, only a 10% or 13% Buyer Premium as noted above. On the Real Estate if sold separately, a 10% Buyer Premium will be due from the Buyer and no commission will be due from the Seller. If the facility is sold as an entirety, a 7% Buyer Premium will be due from the Buyer and no commission will be due from the Seller. The gross receipts shall include the gross receipts from all sales made during the period of this Contract, whether such sale is made by private sale or in any other manner. This Contract shall include a full commission for any items withdrawn from the list of property to be sold, which are sold or transferred within 180 days after the auction. This Contract shall also include a full commission for any items included in the list of property that are not sold, but have a signed purchase agreement in the case of real estate or a written commitment to purchase in the case of equipment within 180 days after the auction regardless of when the closing and transfer of property occurs. If an item in the above provided list is sold or withdrawn without consent of Maas, Maas shall receive a full commission on the item, based on its fair market value except that under no circumstances

EXHIBIT "A"

"A Family Tradition of Excellence Since 1920"

will a commission be due to Maas on (i) an item which is withdrawn from the sale pursuant to a court order entered prior to the commencement of Phase II, or (ii) an item to which Seller cannot convey unencumbered and merchantable title to a prospective buyer, provided that Seller provides Maas with a written list of any such item(s) prior to the commencement of Phase II. In the event any items which are withdrawn or excluded from the sale prior to the commencement of Phase II are added back to the sale after the commencement of Phase II, then Maas shall receive a full commission on such items. The full commission shall be due and payable to Maas within 10 days, whether the sale is made for cash or on terms agreed to by Seller. Maas is entitled to a full commission in the event that the Seller cannot give clear title to the equipment or real estate (unless such equipment or real estate is withdrawn from the sale prior to the commencement of Phase II for the reasons set forth hereinabove). Maas will be entitled to a full commission in the event that a transaction does not close, but Seller has collected and retained the earnest money.

5. In the event of postponement of the auction by Seller, the auction shall take place at a later date, agreeable to both parties. All expenses incurred by Maas as a result of the postponement, including personnel expenses, promotion and other costs shall be the responsibility of the Seller and paid to Maas.

6. Buyer will pay for items in full on day of sale. Payment methods will be approved by Seller in advance of sale. Internet buyers will have 24 hours to make complete payment.

7. All funds will be made payable to Seller. Seller or Seller's agent will collect the gross receipts from buyers at time of sale and Seller will pay the Maas fees, at the rates set herein, from the gross receipts collected. Maas will clerk and invoice the buyers. Maas fees shall be paid from the gross receipts prior to payment and satisfaction of any liens and encumbrances on the equipment.
Seller and/or their representative will also be responsible to remit any and all applicable taxes due the governing entities of Nebraska.

8. The Seller shall have the responsibility of verification on: security filings, bill of sale, title transfers, and any other legal documentation matters. Seller shall provide Maas with copy of such verification.

9. Seller hereby agrees to sell the above equipment to the purchaser by Bill of Sale free from all encumbrances.

10. As between Maas and Seller, Seller shall be responsible for all environmental problems, if any.

11. Seller agrees to provide merchantable title to purchasers. Seller shall indemnify and save Maas harmless against any and all claims made by any person, firm, or corporation.

12. All of the terms and conditions of the sale shall have the prior approval of the Seller. The approval must be obtained prior to any advertising or marketing of the equipment.

13. Equipment shall be sold to the highest bidder, unless other noted and acknowledged by the Seller and Maas.

14. Maas Companies retains the rights to all materials created for this sale.

15. All currency expressed in this Contract is in U.S. dollars.

16. This agreement shall be interpreted under the laws of the state of Minnesota, the headquarters of Maas Companies Inc., and the parties agree to submit all disputes and themselves to the jurisdiction of the district courts and mediation bodies of the State of Minnesota for resolution of all disputes concerning this agreement.

17. During the time of this contract, Maas shall be the only entity advertising and marketing the property and all inquiries will be directed to Maas.

*"A Family Tradition of Excellence Since 1920"*

18. Maas Companies is being hired as a specialist in this arena of business; Maas and Seller will work in coordination to establish the sale process, however Maas will have the final determination in the best manner of sale in order to maximize asset recapture.

19. In the event of default, Seller agrees that Maas may seek specific damages as due under the terms of this Agreement along with Maas' cost of enforcement of this agreement (including reasonable attorney's fees) provided that any such action is commenced within six months from date of default.

20. Maas and Seller agree that the terms and conditions of the 13 page "Auction Proposal" dated April 24, 2009 shall be incorporated in and become a part of this Agreement, provided that in the event of a conflict between the terms and conditions of this Agreement and the Auction Proposal the terms and conditions of this Agreement shall control.

21. Following is a summary of the fees and commissions to be paid to Maas under this Agreement:

**Phase I Pre-Marketing Fee:**

| | | |
|---|---|---|
| Due upon Contract Signing | $ 20,000.00 | Invoice #1 |
| Subcontractor Professional time billed dollar for dollar and not to exceed $35,000.00, to be paid in full 10 days after submittal, as incurred | $ TBD | Invoice #2 |

**Phase II Advance Advertising & Marketing Fee:**

| | | |
|---|---|---|
| Due when Phase II Begins | $ 42,964.95 | Invoice #3 |

**Maas Fees:**
**Equipment:**

| | |
|---|---|
| 10% Buyer Premium | 50% due within 10 days of auction. 50% due within 30 days of auction. |
| 13% Internet Buyer Premium | 50% due within 10 days of auction. 50% due within 30 days of auction |
| 5% Commission, as applicable | Due within 10 days of auction. |

**Real Estate:**

| | |
|---|---|
| 10% Buyer Premium, if applicable | 50% due within 10 days of auction. 50% due within 30 days of auction. |
| 7% Entirety Buyer Premium, if applicable | 50% due within 10 days of auction. 50% due within 30 days of auction |
| Travel Expense Reimbursement | Due within 10 days of submittal, as incurred. |

Diane Maas, President
Maas Companies Inc.
Post Office Box 7127
Rochester, MN 55903
Date 5/28/09

Jeffrey B. Farnham, P.C., L.L.O.
By: _____
Jeffrey B. Farnham, President
Date 5/28/09

"A Family Tradition of Excellence Since 1920"